UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS CURTIS,<br><br>Defendant. | Criminal Action No. 03-533 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM AND ORDER

Pending before the Court are defendant's two motions for compassionate release, one filed in December of 2019, Def.'s Petition for Reduction in Sentence or Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Initial Mot."), ECF No. 223, which the parties' agreed-upon briefing schedule would make ripe on June 1, 2020, *see* Scheduling Order (Jan. 16, 2020), and one filed on an emergency basis, on April 3, 2020, Def.'s Emergency Mot. for Compassionate Release ("Def.'s Emergency Mot."), ECF No. 228.  Defendant, who suffers from multiple sclerosis, "has lost 85% of his vision," and "spends all of his days confined to an electric wheelchair or bed" has served 17 years of his life sentence. *Id*. at 3, 6.  He worries that his deteriorating physical condition make him "particularly susceptible to contracting a life-threatening illness" like COVID-19, currently the cause of a worldwide pandemic and national emergency.[1] *Id*. at 18.  For the reasons set forth below, defendant's motions are granted, and his sentence of imprisonment is reduced to a sentence of time served.

---

[1]   *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, OFFICE OF THE PRESIDENT OF THE UNITED STATES, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited April 22, 2020).

1

**I.      BACKGROUND**

On March 31, 2004, a federal grand jury issued a nine-count superseding indictment charging defendant with numerous federal offenses arising out of a sex-trafficking operation involving minors.[2] Defendant was found guilty of six of those nine charges on July 2, 2004 and was thereafter sentenced to six concurrent terms of life imprisonment. Judgment at 2, ECF No. 110.[3] Although the Sentencing Judge imposed six terms of life imprisonment, the judgment also sentenced defendant to two five-year terms of supervised release and four three-year terms of supervised release to be served concurrently. Judgment at 3.[4] Defendant appealed and the D.C. Circuit affirmed his sentence. *See United States v. Curtis*, 481 F.3d 836 (D.C. Cir. 2007).

Since losing his appeal, defendant has made several attempts to reduce his sentence. *See* Motion Under 28 U.S.C. § 2255 (May 5, 2008), ECF No. 121; Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (Mar. 17, 2010), ECF No. 155; Motion to Vacate Judgment Denying Habeas Relief Pursuant to Fed. R. Civ. 60(b)(1) and (6) (Aug. 15, 2011), ECF No. 167; Emergency Motion for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 (Jun. 23, 2016), ECF No. 189; Petition for Relief Pursuant to Common Law Writ of Error *Audita Querela* (Jun. 27, 2017), ECF No. 196. None have yet been successful.

---

[2]      In particular, defendant was charged with two counts of sex trafficking of children, in violation of 18 U.S.C. § 1591, two counts of transporting minors for prostitution, in violation of 18 U.S.C. § 2423(a), one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), one count of transporting a person for prostitution, in violation of 18 U.S.C. § 2421, one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1), one count of conducting certain activities relating to material constituting or containing child pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(B) and 2256, and one count of tampering with a witness, victim or informant, in violation of 18 U.S.C. § 1512(b)(1) and (b)(2)(A). *See* Superseding Indictment, ECF No. 19.

[3]      Defendant's motion for acquittal was granted as to Count 5 of the superseding indictment, *see* Min. Entry (Jun. 30, 2004), and he was found not guilty on Counts 7 and 9, *see* Min. Entry (Jul. 2, 2004).This case was reassigned to the undersigned Judge on July 14, 2017.

[4]      This case was reassigned to the undersigned Judge on July 14, 2017.

In 2019, defendant again sought a reduction in his sentence by requesting that the Federal Bureau of Prisons ("BOP") move for compassionate release on his behalf.[5] He claimed that his medical condition made him eligible for early release under BOP regulations and the statute governing compassionate release. Def.'s Mot. to Appoint Counsel, App'x A ("BOP Decision") at 1, ECF No. 224. Specifically, in 2005, defendant was diagnosed with multiple sclerosis ("MS"), a neurological condition that has created a slew of medical issues for defendant, including "incomplete quadriplegia, hypertension, esophageal reflux, irritable bowel syndrome," and "diplopia[] and glaucoma" resulting in defendant's loss of 85% of his vision. Def.'s Emergency Mot. at 3. Defendant is unable to walk and so he spends all of his time in bed or in an electric wheelchair. *Id*. He is also "intermittently incontinent of both bowel and bladder," BOP Decision at 2, and as a result, wears diapers, Def.'s Emergency Mot. at 3. As BOP put it, defendant "requires assistance with all activities of daily living." BOP Decision at 2. There is no known cure for MS, and defendant expects that his "condition will not improve." *Id*. at 17 (citing *Multiple Sclerosis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/diagnosis-treatment/drc-20350274 (last visited Apr. 22, 2020)).

Despite finding that defendant was "in a debilitated medical condition," BOP denied his request owing to "the nature of his convitions [sic] and his discipline history." BOP Decision at 2. On December 23, 2019, defendant filed a motion for compassionate release directly with this Court. *See* Def.'s Initial Mot. Briefing on that motion was underway when the global COVID-19 pandemic took hold. *See* Scheduling Order (Jan. 16, 2020); *see also supra* n.1. The spread of COVID-19 prompted defendant's second, emergency motion for compassionate release. According to him, because the physical ailments that gave rise to his December motion for

---

[5] The record is unclear as to when defondant made this request.

compassionate release put him at greater risk of complications should he contract COVID-19, his need for compassionate release is all the more urgent. Def.'s Emergency Mot. at 3.

## II.   LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United* States, 564 U.S. 522, 526 (2011). As originally enacted, one such exception, codified in section 3582(c)(1)(A), empowered the BOP Director to "petition the court for a reduction in . . . sentence" and gave courts the authority to grant those petitions if they found "that the reduction was justified by 'extraordinary and compelling reasons.'" S. Rep. 98-223 at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2).[6] As amended in the First Step Act of 2018, Pub. L. No. 115-391, the exception in section 3582(c)(1)(A) is expanded to authorize a defendant directly to file a motion for such compassionate release with the court after exhausting "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his] facility." 18 U.S.C. § 3582(c)(1)(A).

In resolving motions for compassionate release, the court may reduce a term of imprisonment only "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and

---

[6]   As originally enacted, 18 U.S.C. § 3582 read as follows:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.

Pub. L. No. 98-473, Title II, § 212(a)(2).

compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i)[7]; and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).[8]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as to both of the statutorily required findings. It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id*. § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide self-care" within the prison environment, *id*. § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id.* § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of

---

[7] Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).o

[8] The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2), and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id*. § 994(t).

5

"[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id.* § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id.* § 1B1.13, cmt. n.1(D).

### III. DISCUSSION

Much common ground exists between defendant and the government. For instance, the parties agree that defendant has met the exhaustion requirements of the compassionate release statute. *See* Gov't Opp'n to Def.'s Emergency Mot. ("Gov't Opp'n") at 8, ECF No. 233 ("[T]he statute allows defendant to file this motion with the court . . . because more than 30 days has elapsed since the Warden's receipt of the defendant's request"); *see also* 18 U.S.C. § 3582(c)(1)(A) (allowing the defendant to file a compassionate release motion directly with the court after "the lapse of 30 days from the receipt of . . . a request by the warden of the defendant's facility"); BOP Decision at 1 (denying defendant's request on December 4, 2019). The parties are also in accord that defendant's medical condition "comports with" the requirements of the Sentencing Commission Policy Statement's definition of extraordinary and compelling circumstances. Gov't Opp'n at 8. In particular, the commentary to that policy statement explains that "extraordinary and compelling reasons" warranting release exist when (2) "[t]he defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" if that impairment "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and

is a condition from which he is "not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). BOP itself found that defendant's serious functional impairments caused by his advanced MS mean he "requires assistance with *all* activities of daily living." BOP Decision at 2 (emphasis added). Defendant's incurable medical condition thus renders him unable to "provide self-care within the environment of a correctional facility" and satisfies the requirements of the policy statement. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

Demonstrating that defendant falls into one of the categories of extraordinary and compelling reasons enumerated in the Sentencing Commission's Policy Statement is, however, but one ingredient in the compassionate release inquiry. Both statute and policy statement instruct courts to also "consider[] the factors set forth in 18 U.S.C. § 3553(a)." U.S.S.G. § 1B1.13; 18 U.S.C. § 3582(c)(1)(A). In addition, the policy statement requires courts to determine whether "[t]he defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The government stakes its argument against compassionate release on these requirements. In the government's view, "compassionate release would minimize the severity of the offenses committed by defendant," Gov't Opp'n at 10, and, in a single sentence, avers that "defendant has not established that he is not a danger to any person or to the community," *id*. at 8. Both arguments, however, miss the mark.

To begin, consideration of the factors listed in section 3553(a) does not counsel against release. The "nature and circumstances of [defendant's] offense" are certainly very serious. 18 U.S.C. § 3553(a)(1). Defendant enticed children into the sex trade and plied them with drugs and alcohol. *See* Gov't Opp'n to Def.'s *Pro Se* Motion for Modification or Reduction of Term of Imprisonment at 4, ECF No. 217. Defendant acknowledges that his crimes were heinous—they

7

"disgust[]" him now. Def.'s Letter at 1, ECF No. 237. Aspects of the defendant's "history and characteristics" are also troubling. Before the six convictions that led to his current terms of life imprisonment, defendant was convicted of "[p]romoting prostitution with a minor" in New Jersey state court and of "[i]mporting [a] controlled substance." Def.'s Emergency Mot. at 8–9. This criminal history led directly to the imposition of a life sentence. *Curtis*, 481 F.3d at 838. Under the then-applicable sentencing guidelines, "a defendant with at least two prior felony convictions of qualifying offenses receive[d] a greatly enhanced guideline sentence when convicted of another qualifying offense." *Id*. Qualifying offenses for this "career offender" designation included "controlled substance offense[s]" and "crime[s] of violence." *Id*.; *see also* U.S.S.G. § 4B1.1(a). At the time crimes of violence included "any offense under federal or state law" that "involve[d] conduct that presents a serious potential risk of physical injury to another." *Curtis*, 481 F.3d at 838. In affirming the Sentencing Judge's decision to label defendant a career offender for purposes of sentencing, the D.C. Circuit held that defendant's New Jersey prostitution offense was one that "present[ed] a serious potential risk of physical injury to another." *Id*. at 838–39.

The language used to categorize defendant's state prostitution offense as a crime of violence, the so-called "residual clause," *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015), has since been the subject of considerable litigation. When the language was used in a statute to define the elements of a particular crime, the Supreme Court held it to be unconstitutionally vague. *Id*. at 2560. The Supreme Court, however, declined to find identical language unconstitutionally vague when used as part of the advisory sentencing guidelines. *Beckles v. United States*, 137 S. Ct. 886, 895 (2017). Nevertheless, the Sentencing Commission responded to the "uncertainties in the residual clause" described by the Supreme Court, *Johnson*, 135 S. Ct.

at 2560, by excising it from the sentencing guidelines altogether. *See* U.S.S.G. § 4B1.2(a) (defining "[t]he term 'crime of violence'"). If defendant were sentenced today, he thus would not be subject to an enhanced sentence. Indeed, according to defendant, absent the "career offender" enhancement, the sentencing guidelines would have recommended a sentence of between 188 months' (15.5 years) and 235 months' (19.5 years) imprisonment. Def.'s Emergency Mot. at 32. The government does not quibble with this analysis or guideline re-calculation. That a defendant sentenced today, identical in every way to the defendant in this case, would face 15.5–19.5 years' imprisonment is strong evidence that defendant's 17 years' imprisonment adequately reflects the "seriousness of [his] offense" and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2). Moreover, a sentence that falls within the guidelines range is consistent with two of the other section 3553(a) factors. *Id*. §§ 3553(a)(3) (directing courts to consider "the kinds of sentences available") and (a)(4) (requiring courts to consider "the guidelines . . . issued by the sentencing commission").

Defendant's already-served sentence of 17 years' imprisonment also "protect[s] the public from further crimes of the defendant," especially in this case where the defendant to be released in no way resembles the defendant sentenced in 2006. *Id*. § 3553(a)(2)(C). Not only will defendant be under supervised release for five years,[9] but his physical limitations seriously undermine the notion that defendant might engage in further criminal conduct. Defendant also shows true remorse for his actions, going so far as to say he "hate[s] who [he] was." Def.'s Letter at 1. His minimal disciplinary record also suggests that he is serious about his

---

[9] 18 U.S.C. § 3582(c)(1)(A) provides only for reductions of "imposed term[s] of imprisonment," and contains no authority to adjust terms of supervised release. While other provisions of law may provide such authority, the Court's power under the instant motion is limited to adjusting defendant's term of imprisonment.

9

commitment to becoming "a man of integrity." *Id*.[10] Defendant's actions substantiate this commitment—he has obtained his GED, has completed the non-residential drug treatment program, and has taken advantage of "approximately 1,900 hours[']" worth of educational opportunities. Def.'s Emergency Mot. at 7. These rehabilitation steps are commendable and may appropriately be taken into consideration. *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (permitting consideration of "evidence of a defendant's rehabilitation since his prior sentencing" and holding that "such evidence may . . . support a downward variance from the advisory guidelines range" when a defendant's case has been remanded to a district court for resentencing).

Finally, as discussed above, recent developments in the guidelines mean that defendant's life sentence is out-of-step with sentences that would be imposed on similarly-situated defendants today. Section 3553(a)(6) specifically instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although the amendment that led to a lower guidelines range for individuals like defendant is not one made eligible for retroactive application by the sentencing commission, *see* U.S.S.G. § 1B1.10(d), the explicit call for similar sentences for similarly-situated defendants provides additional support for the notion that reducing defendant's sentence complies with the section 3553(a) factors.

As to the government's one-sentence comment that "defendant has not established that he is not a danger to any person or to the community," pursuant to U.S.S.G. § 1B1.13(2), Gov't Opp'n at 8, the record does not support such a contention. Defendant is confined to a bed or

---

[10]   Defendant admits to having six infractions on his prison record: "four for refusing work assignments, one for interfering with the [taking of the prison] count, and one for possessing gambling materials." Def.'s Emergency Mot. at 33–34.

wheelchair and has lost 85% of his vision.  He requires assistance with even the simplest tasks of everyday life.  The Court does not deny the metaphysical possibility that a person in such condition might commit further crimes, but to suggest the possibility is high or even middling would be to ignore reality.

In sum, defendant has met section 3582(c)(1)(A)'s exhaustion requirements, he has shown that he fits neatly within one of the Sentencing Commission's enumerated examples of "extraordinary and compelling reasons" for release, consideration of the section 3553(a) factors counsels in favor of relief, and little to nothing in the record suggests that defendant, in his current debilitated condition, would pose a danger to the community.  Even if this were not enough, the spread of COVID-19 in BOP facilities, *see COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ ("[T]here are 540 federal inmates and 323 BOP staff who have confirmed positive test results for COVID-19 nationwide" including 23 who have died as of April 21, 2020.) (last visited Apr. 22, 2020), and defendant's particular susceptibility to the worst effects of that virus adds great urgency to his request, *see People Who are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (listing "[p]eople of all ages with underlying medical conditions" among those at highest risk from the disease) (last visited Apr. 22, 2020).  Defendant's request will therefore be granted.

**IV.   ORDER**

For the foregoing reasons, defendant's Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i), and his Petition for Reduction in Sentence or Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) are **GRANTED**.  Accordingly, it is hereby

**ORDERED** that defendant's previously imposed sentence of six terms of life imprisonment are reduced to time served; and it is further

**ORDERED** that the defendant abide by all supervised release conditions imposed in the original judgment.

Date: April 22, 2020

_____
BERYL A. HOWELL
Chief Judge